**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN FINGER,<br><br>Plaintiff,<br><br>v.<br><br>CARFAX, INC., and BARBOUR, INC.,<br><br>Defendants. | Civil Action No. 26-1411 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Steven Finger, an African American male, brings a racial discrimination claim, under 42 U.S.C. § 1981, against defendants Carfax, Inc. and Barbour, Inc., for ordering him to leave a Carfax-sponsored event at a Barbour store because of his race, thereby depriving him of contractual rights protected by Section 1981, including "the ability to remain on the premises, socialize with Carfax personnel and other attendees, and browse and purchase Barbour merchandise on the same terms as white invitees." Complaint ("Compl.") ¶¶ 1, 16, ECF No. 1. While Barbour has answered the complaint, *see* Def. Barbour's Answer, ECF No. 6, Carfax has moved to dismiss the complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6), which motion plaintiff opposes. *See* Def. Carfax Inc.'s Mot. Dismiss, ECF No. 8; Def. Carfax, Inc.'s Mem. Supp. Mot. Dismiss ("Carfax's Mem."), ECF No. 8-1; Pl.'s Mem. Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 12. Carfax's motion is ripe for review. *See* Def. Carfax, Inc.'s Reply Supp. Mot. Dismiss ("Carfax's Reply"), ECF No. 16. For the reasons explained below, Carfax's motion to dismiss the complaint against this moving defendant is granted.

## I. BACKGROUND

The relevant facts, as alleged in plaintiff's complaint, are summarized as follows. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true."). In December 2022, plaintiff was a guest of his "then-partner, Amy Gibson, a Carfax employee and manager," at two holiday events hosted by Carfax for its employees and their invited guests. Compl.¶¶ 11-12. The first event, held on December 16, 2022, was a cocktail hour at which plaintiff wore business casual attire. *Id.* ¶ 12. During this event, plaintiff met some of Gibson's co-workers, including Debbie Brennan, "and there were no issues with his presence." *Id.* The next day, December 17, 2022, a second Carfax-sponsored holiday party was held at defendant Barbour's retail store, on M Street NW in Washington, D.C., *id.* ¶ 10, where "guests, including [p]laintiff, were permitted to remain on the premises to socialize and to browse and purchase Barbour merchandise," *id.* ¶ 15. At this event, plaintiff, along with other attendees, "wore casual clothing," *id.* ¶ 14, which, for plaintiff, included a durag and cap, *id.*

During the Carfax-sponsored event at the Barbour store, Carfax "personnel" Brennan, whom plaintiff had met the day before, approached plaintiff "as if she did not know him" and asked plaintiff if he worked for Barbour. *Id.* ¶¶ 12, 16. Plaintiff responded that "he did not work for Barbour," at which point "Brennan abruptly and without further inquiry" told plaintiff that he was at a private event and that he needed to leave. *Id.* ¶ 17. Plaintiff was next approached by a Barbour employee who "reiterated that this was a private event and that [p]laintiff needed to leave." *Id.* ¶ 18. Plaintiff explained that he would not leave "because he was an authorized attendee at the Carfax event, present with his Carfax-employee partner." *Id.* ¶ 19. Two additional Barbour employees then approached, also insisting that plaintiff leave. *Id.* ¶¶ 20-21. The

employees reached for plaintiff's arm, attempting "to physically escort [p]laintiff out of the store." *Id.* ¶ 22. At this time, plaintiff told his partner, Gibson, in a voice "loud enough for the entire venue to hear" that he was leaving the event in response to the treatment he was receiving. *Id.* ¶ 23. Plaintiff then left the Barbour store and decided not to attend a third holiday event hosted by Carfax due to the "distress caused by this incident." *Id.* ¶¶ 24-25.

Following the event at the Barbour store, plaintiff alleges that unnamed Carfax executives spoke with plaintiff, *id.* ¶ 26, but did not "apologize[] to Plaintiff for the . . . public humiliation he experienced at the Carfax-sponsored Barbour event," *id.* ¶ 28, and "appeared to have assumed that Barbour employees had caused the incident," *id.* ¶ 26. In contrast, nearly one month after the incident, the executives spoke with plaintiff's then partner, Gibson, who is white, "to apologize to her and to thank her for her 'professionalism' during the incident." *Id.* ¶ 27.

On April 24, 2026, three and a half years after the incident at the Barbour store, plaintiff initiated this action seeking damages from both Carfax and Barbour, alleging that defendants ordered him to leave the holiday event because of his race and thereby deprived him of contractual rights protected by 42 U.S.C. § 1981, including "the ability to remain on the premises, socialize with Carfax personnel and other attendees, and browse and purchase Barbour merchandise on the same terms as white invitees." Compl. ¶¶ 1, 16.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a Rule 12(b)(6) motion, a court must "accept the operative complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the [plaintiff's] favor." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). Factual disputes, however, generally cannot be resolved on a motion to dismiss, as a court's "role is not to speculate about which factual allegations are likely to be proved after discovery." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015).

## III. DISCUSSION

Carfax moves to dismiss plaintiff's complaint on the ground that "plaintiff has not alleged any facts indicating Carfax prevented him from making or enforcing a contract." Carfax's Mem. at 8 (citation modified).[1] This Court agrees.

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . .as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statutory phrase "make and enforce" is defined, by statute, to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). As this text makes clear, this statute "protects the equal right of 'all persons' to 'make and enforce contracts' without respect to race," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (citation modified) (quoting 42 U.S.C. § 1981(a)), and "prohibit[s] not only racially discriminatory government interference with private contracting but also purely private discrimination in contracts," *Fair Emp. Council of Greater Washington,*

[1] Carfax raises two additional arguments in favor of dismissal, including that "plaintiff has not alleged any facts indicating Carfax treated him poorly on account of his race, so his claim under 42 U.S.C. § 1981 fails as a matter of law;" and that "plaintiff had no contractual relationship with Carfax, so his Section 1981 claim is barred as a matter of law," Carfax's Mem. at 7, 10 (citation modified), but these arguments need not be addressed since the motion to dismiss is resolved on an alternative ground.

*Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1270 (D.C. Cir. 1994); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 171 (1989) ("[Section] 1981 'prohibits racial discrimination in the making and enforcement of private contracts'" (quoting *Runyon v. McCrary*, 427 U.S. 160, 168 (1976))). Moreover, "§ 1981's prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 302 (1994). While "[l]itigation involving § 1981 most commonly involves the right to make and enforce contracts of employment," plaintiffs may also bring "claims involving retail transactions," *Morris v. Off. Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996), including claims challenging "certain behavior" by merchants "preceding a sale," *Withers v. Dick's Sporting Goods, Inc.*, 636 F.3d 958, 963 (8th Cir. 2011).

"To establish a claim under § 1981, a plaintiff must show that (1) he or she is a member of a racial minority group; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 44-45 (D.D.C. 2003) (citation modified) (quoting *Morris v. Off. Max*, 89 F.3d at 413). Carfax challenges the adequacy of the Complaint's allegations to support the third element, contending that plaintiff failed to "allege any facts indicating that [plaintiff] attempted to purchase goods at the holiday event or anytime thereafter and was prevented from doing so." Carfax's Mem. at 9. In support of this challenge, Carfax marshals cases from both outside this circuit and from this Court holding that, to succeed on a Section 1981 claim in the retail context, the claim must be supported by allegations that plaintiff took a tangible step to make a purchase or to otherwise transact with a defendant retailer. *See* Carfax's Mem. at 8-10 (citing *Garrett v. Tandy Corp.*, 295 F.3d 94, 102 (1st Cir. 2002) ("In order to state a claim upon which relief can be granted under section 1981, a complaint must allege the actual loss of a contract

interest, not simply the theoretical loss."); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001) ("[T]o raise a material issue of fact as to her § 1981 claim, [plaintiff] must offer evidence of some tangible attempt to contract with [defendant] during the course of the [alleged discriminatory conduct], which could give rise to a contractual duty between her and the [defendant], and which was in some way thwarted."); *Touray v. Burlington Coat Factory Warehouse Corp.*, 2021 U.S. Dist. LEXIS 243517, at *6 (W.D. Wash. Dec. 21, 2021) ("[T]o establish a prima facie case of discrimination under section 1981, at a minimum, a retail plaintiff must have attempted to contract with the store. Merely entering the store to shop is not sufficient."); *Apollo v. CVS Pharmacy, Inc.*, 2019 U.S. Dist. LEXIS 3781, at *6-7 (D.D.C. Jan. 9, 2019) ("[Plaintiff] fails to state a claim because he has not alleged any facts that show he was denied the right to enter into or to enforce a contract as required by Section 1981 . . . , but rather states [only that] he was denied 'services and benefits offered to customers and clients of CVS' and 'ordinary common privileges and services normally guaranteed to all of CVS Pharmacy customers and clients.'"); *Jackson v. Tyler's Dad's Place, Inc.*, 850 F. Supp. 53, 56 n.6 (D.D.C. 1994) ("Plaintiffs [bringing a Section 1981 claim] never asked to be seated [at a defendant restaurant] during [a] . . . visit [in which plaintiffs allegedly experienced race-based discrimination] and therefore never sought to enter a contractual relationship on that occasion.")). Underlying this requirement of showing a tangible-step towards entering a contract is the principle that, because "Congress did not intend . . . section 1981" to be "a general prohibition against race discrimination," plaintiffs must "show a sufficient nexus between the asserted discrimination and some contractual right or relationship." *Garrett*, 295 F.3d at 98, 100; *accord Fair Employment Council*, 28 F.3d at 1271 (emphasizing that a contract is the *sine qua non* for a valid Section 1981

claim to "conclude, therefore, that the loss of the opportunity to enter into a contract voidable at the other party's will is not cognizable under § 1981.").

Although no binding precedent in this Circuit directly addresses the sufficiency of allegations as to the loss of a protected contractual right in the retail context before a sale is made, other circuits have required the same showing of tangible steps to enter a contract as occurred in *Garrett* and *Morris v. Dillard Dep't Stores* to sustain a Section 1981 claim. *See, e.g.*, *Withers*, 636 F.3d at 963 ("To show protected activity in the retail context, § 1981 plaintiffs . . . must show an attempt to purchase, involving a specific intent to purchase an item, and a step toward completing that purchase."); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 854 (8th Cir. 2001) (concluding that, even though a plaintiff purchased beef jerky and was subsequently detained for concealing other goods, the defendant "cannot be said to have deprived [the plaintiff] of any benefit of any contractual relationship, as no such relationship existed" at the time of the detainment because "nothing that happened after the sale created any further contractual duty on [the merchant's] part"); *Morris v. Off. Max*, 89 F.3d at 414-15 ("[B]ecause [plaintiffs] did not attempt to make any further purchases, [plaintiffs] never sought to enter into a contractual relationship with [defendant]. Their allegation that [defendant] interfered with their 'prospective contractual relations' is speculative and insufficient to state a claim under § 1981. A claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities.").

Finally, as Carfax noted, the tangible-step requirement has been applied by other Judges on this Court in evaluating the sufficiency of a Section 1981 claim in circumstances where no completed transaction occurred, and in each of these cases more concrete steps showing an intent to make a purchase was required than merely allegations of presence in the store combined with

an unpleasant interaction with the merchant's employees. *See, e.g.*, *Apollo*, 2019 U.S. Dist. LEXIS 3781, at *5-7 (dismissing Section 1981 claim because "nothing about these facts" alleging plaintiff was forced out of the store while he was trying to use the restroom "give rise to a claim that CVS impeded [plaintiff] from enforcing or making a contract such that there is an inference that the defendants could be liable under Section 1981"); *Newman v. Borders, Inc.*, 530 F. Supp. 2d 346, 349-50 (D.D.C. 2008) ("[Plaintiff] has sufficiently alleged a contractual interest," under Section 1981, "by alleging that he selected a specific book from the shelf and walked toward the cash register with the intent to purchase it[,]" and this contractual interest was allegedly interfered with by "the actions of [defendant] in blocking his path to the register and accusing him of shoplifting [which actions] prevented him from making his purchase."); *Jackson v. Starbucks Corp.*, No. CV 19-1487 (RC), 2021 WL 1317883, at *1, 8 (D.D.C. Apr. 8, 2021) (finding allegations sufficient to support a Section 1981 claim where plaintiff had "pick[ed] up a small package of pre-wrapped madeleine cookies from the counter," and "started to walk towards the end of the line of customers waiting to make their purchase" before he was "refus[ed] . . . service"). This tangible-step requirement is tethered to the text of Section 1981 and the authority supporting its application is persuasive.

Applying the tangible-step requirement to the allegations in the Complaint confirms that dismissal is warranted as to Carfax, as the only moving defendant. The Complaint alleges two categories of "contractual and/or prospective contractual relationships": (1) plaintiff's ability to purchase Barbour merchandise; and (2) his ability to form contractual relationships with other guests, Compl. ¶ 13; Pl.'s Opp'n at 12, but no allegations are made as to any effort by plaintiff, other than attending the event as a guest, to engage in shopping at the Carfax holiday event or to mingle with other attendees to identify possible contractual partners. Instead, plaintiff argues that

"but for being forcibly removed from the event" he would have been "afforded the full and equal enjoyment of the contractual and economic *opportunities* afforded to other invitees." Pl.'s Opp'n at 12 (emphasis added). In essence, his argument is that he has suffered a lost opportunity to take any tangible steps to consider either potentially purchasing Barbour merchandise or potentially contracting with other attendees and that this lost opportunity is cognizable as a protected interest under Section 1981 against Carfax. An alleged lost opportunity is simply too speculative, however, to serve as a sufficient substitute for actual, concrete allegations of tangible steps taken to enter into a contractual relationship. Put another way, merely showing up as a guest to the party at the Barbour store is not enough to find a contractual interest protected by Section 1981. *See Newman*, 530 F. Supp. at 349 ("Although mere presence at a store is not sufficient to allege that a contractual interest existed, the protections of § 1981 are triggered once a customer has made some tangible attempt to contract by selecting particular items offered by the retailer.").

Plaintiff disputes any need for him to "identify specific Barbour merchandise" that he was interested in purchasing and contends that this requirement "mischaracterizes the protections of Section 1981." Pl.'s Opp'n at 12. To support this argument, plaintiff cites *Bonner v. S-Fer Int'l, Inc.*, 207 F. Supp. 3d 19, 23-24 (D.D.C. 2016), for the proposition that plausibly alleging a race-based removal from a store, without showing any attempt by plaintiff to make a purchase beforehand, is sufficient for a plaintiff's Section 1981 claim to survive a motion to dismiss, Pl.'s Opp'n at 12. This citation is wholly misplaced, however, since *Bonner* simply does not say that, nor can be read to support that proposition. In *Bonner*, the plaintiff had taken affirmative steps to select merchandise for purchase, by picking up items and asking a store employee to remove a shoe from the display for her to examine more closely. *Bonner*, 207 F. Supp. 3d at 23-24. Moreover, *Bonner*'s analysis concerned the second element of a Section 1981 claim, as to whether

the plaintiff had plausibly pled that the actions at issue were undertaken based on the plaintiff's race, rather than the third element's requirement that the alleged discriminatory act impede a statutorily protected contractual interest. That is, *Bonner* did not deal with the question of whether plaintiff's mere presence in a store, without any further tangible steps towards a contract in the form of a purchase, triggers Section 1981 protections.

In this case, plaintiff wholly fails to allege taking any tangible steps to enter any contract. Absent this crucial element to support the Section 1981 claim, the Complaint must be dismissed as to Carfax.[2]

## IV. CONCLUSION

For the foregoing reasons, Carfax's motion to dismiss the complaint, pursuant to Federal Civil Rule of Procedure 12(b)(6), is granted as to this defendant. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: September 15, 2026

**BERYL A. HOWELL**
United States District Judge

2 Plaintiff's request to be "grant[ed] leave to amend the complaint" if this Court "find[s] any deficiency in the pleading," Pl.'s Opp'n at 2, 17, is denied. While amendment of a complaint to overcome deficiencies must be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), plaintiff fails to comply with the requirement that "'a request for leave [to amend] must be submitted in the form of a written motion' and the motion must 'state with particularity the grounds for seeking the order [and] state the relief sought,'" *Jones v. Horne*, 634 F.3d 588, 603 n.7 (D.C. Cir. 2011) (alterations in original) (quoting *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010)); *see also* D.C. District Court Local Civil Rule 15.1 (requiring that "[a] motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended."); *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("While Federal Rule [of Civil Procedure] 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a).") (citation modified); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130-31 (D.C. Cir. 2012) (finding "without merit" plaintiff's argument that the district court erred by denying her leave to amend the complaint when that request was expressed only in opposition to motion to dismiss).